664 So.2d 835 (1995)
STATE of Louisiana
v.
Neil Jude BROUSSARD.
No. Cr 95-792.
Court of Appeal of Louisiana, Third Circuit.
December 6, 1995.
*836 Michael Harson, Lafayette, Ted Ayo, Asst. Dist. Atty., Abbeville, for State.
Ronald Melebeck, Abbeville, for Neil Jude Broussard.
Before DOUCET, C.J., and COOKS and PETERS, JJ.
COOKS, Judge.
Defendant, Neil Jude Broussard, was charged by bill of indictment with one count of aggravated oral sexual battery, a violation of La.R.S. 14:43.4(A)(4). After trial by jury, Broussard was found guilty of oral sexual battery. He was sentenced to serve five years at hard labor. The sentence was suspended, and Broussard was placed on five years active supervised probation. The trial court imposed the following special conditions on Broussard's probation: (1) he serve two years in the parish jail, one and one-half years of that time may be served in a halfway house; (2) he stay away from the victim; (3) he obtain his GED; (4) he remain employed or show proof of actively seeking employment during the probation period; (5) he obtain psychological evaluation and treatment while on probation; and (6) he comply with all recordation requirements under La. R.S. 15:540 et seq. Broussard appeals his conviction alleging five assignments of error.

FACTS
At the age of six, T.C., told her mother Broussard performed oral sex on her and made her perform oral sex on him. Broussard is T.C.'s first cousin and babysat her on numerous occasions.

*837 DISCUSSION

Assignment of Error No. 1
Broussard argues the trial judge erred in denying his motion to quash T.C.'s videotaped statement. He contends the statement was not admissible because she was neither sworn to tell the truth nor was her competency established at the time her testimony was taped. The trial judge ruled the videotaped statement was admissible since T.C. was subject to cross-examination at trial. Before the video could be introduced, however, the trial court ordered that T.C. be sworn and the district attorney question her as to whether she knew right from wrong at the time of the taping. The trial court also stated defense counsel could cross-examine the victim on that point.
La.R.S. 15:440.4 provides in pertinent part:
A. A videotape of a child fourteen years of age or under may be offered in evidence either for or against a defendant charged with the rape or physical or sexual abuse of a child. To render such a videotape competent evidence, it must be satisfactorily proved:
(1) That electronic recording was voluntarily made by the victim of the physical or sexual abuse.
(2) That no relative of the victim of the physical or sexual abuse was present in the room where the recording was made.
(3) That such recording is not made of answers to interrogatories calculated to lead the child to make any particular statement.
(4) That the recording was accurate, has not been altered, and reflects what the witness or victim said.
(5) That the taking of the child's statement was supervised by a physician, a board-certified social worker, a law enforcement officer, a licensed psychologist, or an authorized representative of the Department of Health and Human Resources.
Before the videotaped interview was played for the jury, Betty Domingue testified as to the competency of the video. She stated she was a sergeant with the Vermilion Parish Sheriff's Office and she videotaped T.C.'s interview. She also testified she specialized in child abuse and sex crimes. As to the videotape itself, Sergeant Domingue stated T.C. voluntarily gave the statement; no other parties were in the room, specifically the victim's mother and grandmother; she did not attempt to lead the child by eliciting specific answers; and the recording was accurate and had not been altered in any way. Thus, the videotape met the competency requirements of La.R.S. 15:440.4.
La.R.S. 15:440.5 further requires in pertinent part:
A. The videotape of an oral statement of the child made before the proceeding begins may be admissible into evidence if:
(1) No attorney for either party was present when the statement was made;
(2) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;
(3) The recording is accurate, has not been altered, and reflects what the witness or victim said;
(4) The statement was not made in response to questioning calculated to lead the child to make a particular statement;
(5) Every voice on the recording is identified;
(6) The person conducting the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party;
(7) The defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence; and
(8) The child is available to testify.
Sergeant Domingue testified no attorneys were in the room when she interviewed T.C.; the recording was both visual and oral; the recording was accurate and had not been altered; the statement was not made in response to leading questions; her voice is identifiable from that of the child's. Broussard does not contest that the videotape reflects what T.C. said, and Sergeant Domingue was cross-examined by defense counsel. Sergeant Kenneth Harrington testified Broussard and his counsel viewed the videotape the day before trial and counsel viewed *838 the tape on one other occasion. Finally, T.C. was present at trial and was cross-examined by defense counsel. T.C.'s videotaped statement also met the admissibility requirements of La.R.S. 15:440.5.
The questions whether a child witness must be sworn before giving a videotaped statement and whether the child's competency must be established by an interviewer during a videotaped statement are not directly addressed by statute or case law. La.R.S. 15:440.3, however, gives us some guidance. It provides that a videotape authorized by La.R.S. 15:440.1 et seq is admissible in evidence as an exception to the hearsay rule. As such, this rule contemplates that the videotaped statement, oftentimes, will not follow formal administration of an oath attesting to its truthfulness.
Moreover, T.C.'s competency was established by the trial judge before the videotape was played for the jury. T.C. stated she was seven years old, was in the first grade, and she knew the difference between telling a lie and telling the truth. T.C. was also questioned by the prosecution. She stated she remembered when the videotaped statement was taken and the lady who asked her questions. She further testified that at the time the videotape was made, she was in kindergarten and she knew what a lie was in kindergarten. T.C. was then questioned by defense counsel. She remembered that no one else was in the room with her, except Ms. Betty during the videotape interview. She also remembered that she knew the difference between a lie and the truth before she met with Ms. Betty. We conclude the videotaped statement was properly admitted by the trial judge.

Assignment of Error Nos. 2 & 3
By these assignments of error, Broussard claims the trial judge erred in allowing the introduction of T.C.'s videotaped statement because it contained references to other crimes evidence, and the state failed to inform him of its intent to offer this evidence in violation of La.Code Evid. art. 404(B).
In the videotaped statement, T.C. mentions sexual conduct other than oral sex which the defendant engaged in with her. In one instance, T.C. stated, "Bubby [the defendant] takes off my clothesand he takes off his clothesand he gets on top of meand he does sex." T.C. stated the defendant put his "bottom" on hers and made her touch his "bottom." Because the conduct was sexually different from the conduct for which he was charged, Broussard claims the conduct was inadmissible absent Prieur notice.
No Prieur notice is necessary when the other crimes evidence sought to be introduced forms an integral part of the crime charged. La.Code Evid. art. 404(B)(1); State v. Prieur, 277 So.2d 126 (La.1973); State v. Goza, 408 So.2d 1349 (La.1982). In State v. Osborne, 593 So.2d 888 (La.App. 2 Cir.1992), the court found that acts of oral sex and threats made to the victim were integral parts of the charged offense of aggravated rape. Although T.C.'s testimony does not clearly indicate when the other sexual acts occurred in relation to the charged conduct, the acts described by T.C. nevertheless constituted a continuous course of conduct; and, as such, were integral parts of the crime charged.

Assignment of Error No. 4
Broussard claims the district attorney erred in his opening statement by giving his opinion as to the guilt of the accused. Broussard did not argue this assignment in his brief; therefore, it is deemed abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.

Assignment of Error No. 5
Broussard challenges the sufficiency of the evidence to support his conviction for oral sexual battery. He claims that because T.C.'s sworn testimony at trial and her unsworn testimony in the videotaped interview conflict, the sworn testimony should prevail. Defendant further states T.C.'s sworn testimony alone would not support defendant's conviction.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of *839 fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983); State v. Duncan, 420 So.2d 1105 (La. 1982); State v. Moody, 393 So.2d 1212 (La. 1981). It is the role of the fact finder to weigh the respective credibility of the witness; and, therefore, the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino 436 So.2d at 563.
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. The crime for which Broussard was convicted, oral sexual battery, provides in pertinent part:
A. Oral sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, when the offender either compels the other person to submit by placing the person in fear of receiving bodily harm, or when the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.
La.R.S. 14:43.3
Broussard argues the evidence introduced at trial was insufficient to convict him since T.C.'s videotaped statement and her testimony at trial conflict as to whether he forced her to engage in oral sex while sitting in a rocking chair. In T.C.'s videotaped statement, she stated, "Ahin the rocking chaie [sic]he [Bubby] makes me suck his bottom and he licks mine." The interviewer, Sergeant Domingue, told T.C. to use dolls to demonstrate their behavior. The following colloquy took place subsequently:
BD) What else does Bubby do to you?
TC) Ahin the rocking chaie [sic]he makes me suck his bottom and he licks mine.
....
BD) Does he leave your top clothes on? What about his clothes?
TC) He leaves his on.
BD) O.K.
BD) O.K. Put it the way he puts it. O.K. So while he's making you suck his
TC) bottom
BD) bottomhe is licking your orange? O.K. Is there anything else he does?
TC) Atwhen I sleep with himI sleep on the edgeand ahand he comes by me and he gets on top of meand he does this.
BD) O.K. He puts you on top or he gets on top?
TC) Ahhe puts me on toplike that.
BD) O.K. O.K. So anyyou said whenever you sitting in the rocking chair
TC) Uh-huh.
BD) Or he's sitting in the rocking chair?
TC) He.
BD) O.K. Put him sitting up and show Ms. Betty what he does to you?
TC) He sitting like this and I'mand he put me like that.
BD) O.K. Hold on just a minute. Let melet me hold him sitting up. O.K. Now you show me.
TC) He's sitting like that and I'm sithe told me toand he put me like that.
BD) And what does he do after that?
TC) And he puts his bottom on mine. When questioned by defense counsel at trial, T.C. testified as follows:
Q: ... Did I understand you to say that sometimes y'all would be in a rocking chair?
A: Yes, sir.
Q: What would he do?
A: He would kiss me.
Q: Anything else?
A: Uh-uh, no, sir.
Q: That's the only thing he ever did when y'all were in a rocking chair, was just kiss you?

*840 A: Yes, sir.
Q: Do you rememberAre you sure that's the only thing he ever did to you when you were in a rocking chair?
A: Yes, sir.
Q: Do you ever remember talking to Ms. Betty? You remember we talked about Ms. Betty yesterday?
A: Yes, sir.
Q: And if I'm not mistaken, she might have put you on TV; do you remember that?
A: Yes, sir.
Q: Do you remember when she asked you if Bubby did anything to you in a rocking chair?
A: No, sir.
Q: Do you remember her asking you what else does Bubby do to you, and you answered, in the rocking chair he makes me suck his bottom and he licks mine?
A: No, sir.
Q: But that's not true, either, is it? When you were in the rocking chair, did he ever make you suck his bottom?
A: I don't remember.
Q: But when I first asked you that, didn't you tell me that all he did to you in the rocking chair was kiss you?
A: I don't remember if he didonly what I remember he did is kiss me.
Q: So that's the only thing you remember him doing to you?
A: Yes, sir.
Q: When you were in the rocking chair, would you always have your clothes on?
A: Yes, sir.
T.C.'s mother also testified during the trial. T.C.'s mother stated she first learned of Broussard's sexual misconduct when she saw her daughter humping the floor while watching television. When she asked T.C. where she learned such behavior, T.C. replied, "My Bubby taught me that." T.C.'s mother also testified T.C. told her Broussard would take off her clothes and lick her, that he inserted his finger into her anus and she asked him to stop because it hurt, and that he made her suck his penis while they were on a reclining chair.
The evidence, when viewed in a light most favorable to the prosecution, shows Broussard made T.C. perform fellatio and he touched her anus. We decline Broussard's invitation to review the jury decision and accord greater weight to T.C.'s trial testimony. The jury was free to ascribe T.C.'s trial testimony whatever weight it judged reasonable, or none "at all" if it found T.C.'s taped testimony and the recollection of her mother were more credible and accurate. The record supports the jury's findings, and we will not reevaluate the credibility of the witnesses. See State v. Pontiff, 604 So.2d 71 (La.App. 3 Cir.1992). This assignment of error lacks merit.

Errors Patent
La.Code Crim.P. art. 880 provides that when imposing sentence the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The record indicates the trial court did not do so. Resentencing is not required. However, we remand this matter to the district court, instructing it to amend the commitment and minute entry of the sentence to reflect that Broussard is given credit for time served. State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94), 640 So.2d 561, writ denied, 94-1455 (La. 3/30/95), 651 So.2d 858.
Moreover, La.Code Crim.P. art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows the court did not so inform the defendant. The trial judge is directed to inform Broussard of the provisions of Article 930.8 by sending appropriate written notice to Broussard within ten days of the rendition of this opinion and to file written proof that Broussard received the notice in the record of the proceedings. See State v. Fontenot, 616 So.2d 1353 (La.App. 3 Cir.), writ denied, 623 So.2d 1334 (La.1993).

CONCLUSION
For the foregoing reasons, Broussard's conviction and sentence are affirmed.
AFFIRMED.